UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAKIBULLAH NOORI, | Civil Action No. 26-0951 (SDW) |
| Petitioner, | |
| v. | OPINION |
| LUIS SOTO, et al., | |
| Respondents. | |

**IT APPEARING THAT:**

1. Presently before this Court is the amended petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Amended Petition") by Petitioner Shakibullah Noori, who is presently detained by Immigration and Customs Enforcement ("ICE") in the Delaney Hall Detention Facility in Newark, New Jersey. ("Delaney Hall"). (ECF No. 7).

2. Petitioner is a citizen of Afghanistan. (*Id.* ¶ 1). He entered the United States on or about August 21, 2022 and was immediately detained by the Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE"). (*Id.* ¶ 3).

3. DHS conducted a credible fear interview and found that Petitioner had established a credible fear of persecution if he were to be returned to Afghanistan. (*Id.*) He was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A). (*Id.* ¶ 23). His parole was valid from September 26, 2022 to September 25, 2023. (*Id.*) Petitioner filed an application for asylum in June 2023. (*Id.* ¶ 24).

4. On January 30, 2025, DHS issued a Notice to Appear ("Notice") identifying Petitioner as a noncitizen "present in the United States who has not been admitted or paroled" and as "an applicant for admission." (ECF No. 8-1 at 2).

5. The Notice charged Petitioner as a noncitizen "who, at the time of application for admission, [was] not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document … ." (*Id.*) Petitioner was directed to appear before an immigration judge on October 7, 2025. (*Id.*)

6. DHS initiated removal proceedings against Petitioner on February 26, 2025. (*Id.* ¶ 29). According to Petitioner, his October 7, 2025 appointment was cancelled without a rescheduled date. (*Id.*)

7. Petitioner received a letter to appear for a check-in on January 14, 2026. (*Id.* ¶ 30). He was detained at that appointment and taken to Delaney Hall. (*Id.*) He has not received a bond hearing. (*Id.*)

8. In his Amended Petition, Petitioner alleges violations of his Fifth Amendment due process and equal protection rights, his Fourth Amendment right against unreasonable arrest, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA").

9. Respondents filed an answer on February 6, 2026 arguing that Petitioner is properly detained pursuant to 8 U.S.C. § 1225(b)(1) because he is a noncitizen "who was (i) apprehended near the border, (ii) placed into expedited removal proceedings, and (iii) passed a credible-fear screener interview for an asylum claim. Petitioner thus falls under the mandatory detention requirements of § 1225(b)(1)." (ECF No. 8 at 1).

10. Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

11. Petitioner was detained within this Court's jurisdiction and by a custodian within this Court's jurisdiction when he filed the Petition, and he asserts that his continued detention violates due process. Therefore, this Court has habeas jurisdiction over his claims. *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (per curiam) (noting jurisdiction for "core habeas petitions" lies in the district of confinement).

12. Petitioner applied for admission into the United States on August 21, 2022 and was released on parole into the United States pursuant to 8 U.S.C. § 1182(d)(5). (ECF No. 7 ¶ 23).

13. "[P]arole of such [noncitizen] shall not be regarded as an admission of the [noncitizen] and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

14. Noncitizens "who are paroled are thus subject to the 'entry fiction' in which they are legally considered as if they remained at the border throughout and after their parole until removal or credible fear proceedings conclude." *Faqirzada v. Rokosky*, No. 25-cv-16639, 2026 WL 63614, at *2 (D.N.J. Jan. 8, 2026).

15. The record of this matter makes it clear that Petitioner was detained upon arrival in the United States as an "applicant for admission" under § 1225(b). (ECF No. 7 ¶ 23). His release on parole does not change that because Petitioner is treated legally as if he remained at the border for the duration of that parole. At the conclusion of his parole, Petitioner was "restored to the status that [he] had at the time of parole," 8 C.F.R. § 212.5(e)(2), *i.e.,* an applicant for admission. (ECF No. 8-1 at 2).

16. "Petitioner thus remained subject to both the removal procedures, and accompanying mandatory detention, which applies to [noncitizens] detained under § 1225(b)(1)." *Faqirzada*, 2026 WL 63614, at *2.

17. Petitioner's due process and APA arguments fare no better. (ECF No. 7 at 16-21). "[T]he creation of statutory rights associated with a given immigration status falls exclusively within the purview of Congress … ." *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 172 (3d Cir. 2018). This Court has concluded that Petitioner is legally detained pursuant to § 1225(b), and Congress has determined that noncitizens detained pursuant to §1225(b) are subject to mandatory detention during their removal proceedings.[1]

18. Petitioner's Fourth Amendment argument also does not warrant "the remedy Petitioner requests: release from detention. [T]he remedy for an unlawful arrest is the suppression of evidence obtained therefrom, not release from custody." *Valenzuela v. Semaia*, No. 5:25-cv-02853, 2025 WL 3635578, at *4 (C.D. Cal. Nov. 3, 2025) (citing *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984)). "The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if … an unlawful arrest, search, or interrogation occurred." *Lopez-Mendoza*, 468 U.S. at 1039; *see also Naranjo v. Uhls*, No. 4:25-cv-05756, 2025 WL 3771447, at *2 (S.D. Tex. Dec. 31, 2025) ("It does appear the Government has adopted a widespread practice of taking aliens into custody when they appear for court. … Absent a connection that undermines the lawfulness of Petitioner's detention pursuant to the immigration laws, argument that such practice has unintended consequences or is poor policy is simply beyond the jurisdiction afforded upon inquiry on habeas corpus."); *Rezaee v. President*

---

[1] Petitioner's due process arguments do not include a claim that his detention has become overly prolonged, so this Court will not consider that aspect of due process.

*of the United States*, No. 6:25-cv-1140, 2025 WL 4051609, at *5 (M.D. Fla. July 29, 2025) ("Thus, even if Petitioner's initial arrest was unlawful, her detention pending removal may stand.")[2]

19. Although "the legality of [Petitioner's] initial arrest may be at issue in his removal proceedings, it does not provide this Court a basis for concluding that his current detention violates the INA or the Constitution." *Suraj Suraj v. Bondi*, No. 2:25-cv-02699, 2026 WL 507682, at *3 (W.D. Wash. Feb. 24, 2026).[3]

20. Finally, Petitioner argues Respondents violated his Fifth Amendment equal protection rights by targeting him for arrest and removal based on his nationality.[4] He claims that Respondents enacted "restrictive policies [that] foreclosed pathways to lawful status for Afghan nationals and … an apparent campaign to detain Afghan nationals" after another Afghan national

---

[2] *But see Salazar v. Dedos*, No. 1:26-cv-00251, 2026 WL 555336, at *5-6 (D.N.M. Feb. 27, 2026) (concluding that noncitizen's continued detention violated Fourth Amendment). This Court concludes that the District of New Mexico's decision is distinguishable from the present circumstances as it found that the noncitizen was not subject to mandatory detention pursuant to § 1225(b). *See id.* at 5.

[3] Arguably this Court lacks jurisdiction over the Fourth Amendment claim pursuant to 8 U.S.C. § 1252(b)(9) because Petitioner can raise his illegal arrest claim in a petition for review in the appropriate court of appeals, if necessary. *See Khalil v. President, United States*, 164 F.4th 259, 275 (3d Cir. 2026) ("[T]o avoid getting channeled to a [petition for review], a claim must raise now-or-never *questions*, not just now-or-never harms." (emphasis in original)); *Babula v. Immigr. & Naturalization Serv.*, 665 F.2d 293, 295 (3d Cir. 1981) (reviewing Fourth Amendment claims related to warrantless arrests on petition for review).

[4] "Although the Fifth Amendment, unlike the Fourteenth, does not contain an equal protection clause, it does contain an equal protection component." *Wayte v. United States*, 470 U.S. 598, 610 n.9 (1985). The "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975).

allegedly shot two National Guard members in Washington, D.C. on November 26, 2025. (ECF No. 7 ¶ 79).

21. To make out an equal protection claim, Petitioner must show that he was treated differently from other similarly situated persons and that this different treatment was the result of intentional discrimination based on his national origin. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Petitioner has not satisfied these requirements.

22. Petitioner alleges that Respondents targeted Afghan nationals after the shooting, but DHS issued the Notice on January 30, 2025 and commenced removal proceedings against Petitioner on February 26, 2025, well before the D.C. incident. (ECF No. 7 ¶ 29; ECF No. 8-1 at 2).

23. Moreover, Petitioner's January 2026 arrest and detention coincides with an unprecedented period of immigration detentions affecting noncitizens from many countries, not just Afghanistan. Based on the record before this Court, Petitioner has not shown that he is being treated differently than similarly situated noncitizens from other countries.

24. Therefore, this Court will deny the Petition.

25. An appropriate order follows.

_____
Hon. Susan D. Wigenton,
United States District Judge
Dated: March 5, 2026